United States Court of Appeals,

Eleventh Circuit.

No. 96-9092.

James H. HEATH, Jr., Plaintiff-Appellant, Cross-Appellee,

v.

SUZUKI MOTOR CORPORATION; American Suzuki Motor Corporation, Defendants-Appellees, Cross-Appellants.

Nov. 5, 1997.

Appeals from the United States District Court for the Southern District of Georgia. (No. CV295-164), Anthony A. Alaimo, Judge.

Before BIRCH, Circuit Judge, FAY, Senior Circuit Judge, and COHILL[*], Senior District Judge.

FAY, Senior Circuit Judge:

James Heath, Jr., a resident of Georgia, brought this action against Suzuki Motor Corporation, a Japanese corporation, and American Suzuki Motor Corporation, a California corporation, claiming that the 1987 Suzuki Samurai is dangerously defective in its design and that the defendants failed to adequately warn him about the alleged defects. At the district court, a jury rendered a verdict in defendants' favor on liability. Plaintiff now appeals from this verdict. Plaintiff argues that the district court erred by improperly charging the jury under governing Georgia products liability law and by allowing defendants to introduce evidence in violation of controlling state authority and the Federal Rules of Evidence. Defendants cross-appeal and claim the district court erred by not granting defendants' motion at the close of the evidence for judgment as a matter of law. We find no reversible error in any of these claims and, accordingly, AFFIRM the judgment of the district court.

I. Statement of the Case

On September 24, 1991, Heath was driving his father's 1987 Suzuki Samurai when he collided with a Jeep Wrangler while traveling on St. Mary's road near Kingsland, Georgia.

*Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

Following this contact with the Wrangler, the Suzuki Samurai rolled over several times.[1] Heath was thrown from the vehicle. As a result of this tragic accident, Heath is a paraplegic. On December 12, 1994, Heath commenced this products liability suit against Suzuki Motor Corporation and American Suzuki Motor Corporation (collectively "Suzuki"). Heath's case against Suzuki went to jury trial on June 3, 1996. The district court divided the trial into three phases: (1) liability, (2) amount of compensatory damages, and (3) amount of punitive damages. On June 11, 1996, a seven-person jury rendered a verdict for Suzuki on liability. Thereafter, the district court entered the jury verdict as the final judgment in the case. Heath moved for and was denied a new trial. Heath now appeals the jury verdict, citing errors in the trial court's jury instructions and evidentiary admissions.

## II. Discussion

### A. The Jury Instructions

Heath raises three principle challenges to the district court's jury instructions.[2] First, Heath challenges the trial court's application of Georgia's law of products liability as articulated in *Banks v. ICI Americas, Inc.,* 264 Ga. 732, 450 S.E.2d 671 (1994), in drafting the jury instructions. Second, Heath contends that the trial court mischarged the jury, in light of *Banks,* with regard to the "rollover rate" charge which instructed the jury to compare the "rollover rate" of the Suzuki Samurai with that of other sport utility vehicles (SUV's), as opposed to comparing the Samurai to other passenger vehicles.[3] Finally, the plaintiff argues that the trial court's "rollover rate" charge improperly

---

[1]There is considerable dispute between Heath and Suzuki as to the cause of the rollover.

[2]Heath cites more than three errors in the jury instructions, but we find that only these merit discussion.

[3]Because this "rollover rate" charge is the basis for two of the plaintiff's three challenges to the jury instructions, we quote it here:

> In evaluating whether the benefits of the Samurai's design outweigh its risks, you may compare the rollover rate of the Samurai with that of other comparable vehicles. And if the Samurai does not roll over appreciably more often than other sport utility vehicles, than the Samurai cannot be considered defective in this respect.

2

instructed the jury to consider statistics despite the court's pretrial prohibition of such statistical evidence. Because the first two jury charge challenges require a different standard of review from the statistical evidence objection, we analyze the first two separately.

1. *Banks* Test Objection and "Rollover Rate" SUV Objection

At trial, Heath was given the opportunity to object to the jury instructions. In fact, Heath did object to the "rollover rate" charge. Heath, at trial, properly challenged the use of the word "rate" in the "rollover rate" jury charge because, Heath contends, proving a "rate" inherently requires the use of statistical evidence, and the trial court, through a pretrial order, barred the use of such evidence at trial. On the other hand, Heath never objected at trial[4] to the jury instructions on the specific grounds that the jury charges violated *Banks.* Similarly, Heath never objected to the language of the "rollover rate" instruction on the grounds that the charge improperly limited the comparison in the "rollover rate" charge to SUV's. Failure to object to the instructions on these grounds before the jury retired constituted a waiver by Heath of these objections; there is no indication in the record that Heath ever asked the trial court for a ruling on these legal issues or that the trial court was ever aware of the need for such a ruling. *See McClow v. Warrior & Gulf Nav. Co.,* 842 F.2d 1250, 1253 (11th Cir.1988); Fed.R.Civ.P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, *stating distinctly* the matter objected to and the grounds of the objection.") (emphasis added). We will depart from this rule of waiver "only in narrow circumstances when an error is so fundamental as to result in a miscarriage of justice or when the district court's instruction amounts to plain error." *Osterneck v. E.T. Barwick Indus., Inc.,* 825 F.2d 1521, 1533 (11th Cir.1987), *aff'd sub nom.,* 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989) (citations omitted). We now turn our analysis to the question of plain error.

---

[4]An objection on a jury instruction, in order to be preserved for appeal, must be rendered before the jury retires. *See* Fed.R.Civ.P. 51.

Heath's briefs to this court plainly indicate that the law in Georgia is not clear with regard to the requirements of the *Banks* risk-utility test.[5] It is for this reason that we decline to find the jury instructions drafted by the trial court constituted plain error. As we noted in *Osterneck,* a court's reasonable interpretation of the contours of an area of legal uncertainty hardly could give rise to plain error when those contours are, as they are here, in a state of evolving definition and uncertainty. *See* 825 F.2d at 1533, *citing City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 256, 101 S.Ct. 2748, 2754, 69 L.Ed.2d 616, (1981). There is every indication that the district court acted within the bounds of the *Banks* test in drafting the jury charges,[6] including the "rollover rate" charge. Accordingly, we find no plain error by the district court with regard to plaintiff's first two challenges to the jury instructions.

2. The "Rollover Rate" Charge—Statistical Objection

Plaintiff's final challenge to the jury charges must be analyzed using a different standard of review, since a proper objection was made at trial, and the issue was properly preserved for appeal. In this challenge, Heath asserts that in the "rollover rate" charge, the trial court compelled the jury to consider statistics, despite the court's pretrial order prohibiting the introduction of statistical evidence. Heath alleges this instruction confused the jury and effectively directed a verdict against him. We find no merit in this argument.

Our review of the trial court's jury instructions is ultimately deferential. "This Court examines jury instructions as a whole to determine whether they fairly and adequately addressed the

---

[5]*See* Appellant's Brief at 23-24 (referring to "unsettled nature" and "developmental stages" of the *Banks* decision).

[6]It is of no small importance to our determination that the jury instructions issued by the trial court are consistent with the *Banks* opinion that the instructions challenged by Heath are quoted out of context by Heath in his briefs and at oral argument. The district court was careful to insert qualifying language into jury instructions that Heath has been equally careful to leave out when quoting these challenged instructions. In the challenged instructions, the district court repeatedly used the qualifiers "you may consider" or "you may compare" when instructing the jury of various factors that may or may not be found by the jury to be important during its deliberations. The clear intent of such qualifiers was to permit the jury to determine what factors were of consequence when making their decision. Allowing the jury such discretion is entirely consistent with the *Banks* balancing test.

4

issue and correctly stated the law." *Christopher v. Cutter Laboratories,* 53 F.3d 1184, 1190 (11th Cir.1995). So long as the jury instructions as a whole reflect pertinent substantive law, "the trial judge is given wide discretion as to the style and wording that he may employ." *Andres v. Roswell-Windsor Village Apartments,* 777 F.2d 670, 673 (11th Cir.1985); *see also Goulah v. Ford Motor Co.,* 118 F.3d 1478, 1485 (11th Cir.1997). Mindful of our deferential posture, we conclude that Heath's challenge to the trial court's jury instruction comparing the "rollover rate" of the Samurai to other SUV's and not passenger cars is not meritorious.

Heath's objection is essentially based on how "rollover rate" is defined. He argues that "rollover rate" can only mean statistics, and that statistical evidence indicating such a rate was excluded from the trial in light of the district court's pretrial order limiting the use of statistics to those reflecting substantially similar conditions. We disagree with the limited interpretation of the word "rate" that Heath espouses. As the district court aptly pointed out in its order denying plaintiff's motion for new trial, "rate" is not synonymous with "statistics", but can readily be taken to mean "proportion." Additionally, we find compelling that the plaintiff's expert, Wade Allen, in his testimony made frequent mention of the "roll rate" of the Samurai as compared to other vehicles. Given that statistics were not an issue at trial, we find no evidence in the record that the jury took,

or could take, the word "rate" to mean only statistics.[7] Therefore, we find that district court committed no reversible error in charging the jury with this "rollover rate" instruction.

B. The Evidentiary Rulings

The next issue raised by Heath on appeal is whether the trial court abused its discretion in allowing Suzuki to introduce evidence of other rollover incidents involving dissimilar vehicles.[8] Heath argues that, under Georgia law, other incidents are relevant to the issue of a design defect only if they are first supported by a showing of substantial similarity to the underlying case. *See General Motors Corp. v. Moseley,* 213 Ga.App. 875, 447 S.E.2d 302, 306 (1994). Because no such showing was made, Heath contends that the evidence presented was irrelevant to the issues of defect and causation.

As with jury instructions, this court will afford great deference to the decisions of the district court with regard to evidentiary matters. "We will only reverse a district court's ruling concerning the admissibility of evidence where "the appellant can show that the judge abused his broad discretion and that the decision affected the substantial rights of the complaining party.' " *Wood v.*

---

[7]Even if the jury took "rate" to mean statistics, viewing the jury instructions as a whole, this would be just one factor to consider in the risk utility balancing, as evidenced by the instruction's qualifier "you may compare". The district court expressly instructed the jury not to consider any single factor as determinative. Using language that virtually mirrors language used by the Georgia Supreme Court in *Banks,* the trial court instructed the jury as follows:

> [I]n determining whether the plaintiff has met the burden of proof, you must apply a test which balances risks inherent in the design of a product against the uses of the product.
>
> ...
>
> ... [Y]ou must weigh any potential risks inherent in the design of the Samurai against the need for the vehicle to have these design features in order to be useful.

Hence, the claim by Heath that this instruction directed a verdict against him is not supported by the clear language of the instructions and has no merit.

[8]Incidents concerning a Chevrolet Suburban, a Ford Escort, and a Jeep Wrangler were offered by Suzuki during the testimony of Lee Carr, for the stated purpose of illustrating the mechanics of how lateral forces acting on tires can cause a motor vehicle to roll over.

*Morbark Indus., Inc.,* 70 F.3d 1201, 1206 (11th Cir.1995), *citing Murphy v. City of Flagler Beach,* 761 F.2d 622, 626 (11th Cir.1985); *see also Hessen v. Jaguar Cars,* 915 F.2d 641, 645 (11th Cir.1990) (a district court's evidentiary ruling will not be disturbed absent a clear showing of an abuse of discretion). Given that Georgia law does not apply to the admissibility of evidence in this situation and given the nature of the material admitted by the trial court, we find no abuse of discretion.

Heath argues that the trial court erred in not applying Georgia law to determine the admissibility of the evidence at issue. We find no error by the trial court in this respect. Under this circuit's controlling precedent regarding diversity jurisdiction cases, the admissibility of evidence is a procedural issue, and therefore is governed by the Federal Rules of Evidence. "[F]ederal rules apply to procedural matters, including the admissibility of evidence." *Wood,* 70 F.3d at 1207; *see also Borden, Inc. v. Florida E. Coast Ry. Co.,* 772 F.2d 750, 754 (11th Cir.1985). Heath's argument that the admissibility of evidence is a substantive issue is neither supported by the precedent of this circuit nor by the cases Heath cites in support of this contention.[9] Given that Heath's argument on the evidence is predicated on the application of state law, we find no merit to his position.

Heath, citing *Hessen,* also contends that federal law and the Federal Rules of Evidence[10] mandate that the evidence at issue involve incidents "substantially similar" to the rollover of Heath's Samurai, and that the rollover evidence involving other vehicles does not meet this test. The "substantial similarity" doctrine simply does not apply to the evidence presented by Suzuki's expert Lee Carr. This evidentiary doctrine applies when one party seeks to admit prior accidents or

---

[9]Heath's reliance on *Kicklighter v. Nails by Jannee, Inc.,* 616 F.2d 734 (5th Cir.1980) is misplaced. The issue in *Kicklighter* was the inferences a jury could draw from certain evidence under Georgia's *res ipsa loquitur* doctrine, not the admissibility of evidence. *See Kicklighter,* 616 F.2d at 739-740. Similarly, in *Hessen,* the issue regarding evidence went not to the admissibility of the evidence, but rather to the issue of whether or not the evidence was sufficient to support the jury's award of damages. *See Hessen,* 915 F.2d at 645.

[10]Heath contends the evidence is not admissible under Rules 401, 402, and 403 of the Federal Rules of evidence.

occurrences involving the opposing party,[11] in order to show, for example "notice, magnitude of the danger involved, the [party's] ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661 (11th Cir.1988). In order to limit the substantial prejudice that might inure to a party should these past occurrences or accidents be admitted into evidence, courts have developed limitations governing the admissibility of such evidence, including the "substantial similarity doctrine".[12] This doctrine applies to protect parties against the admission of unfairly prejudicial evidence, evidence which, because it is not substantially similar to the accident or incident at issue, is apt to confuse or mislead the jury.[13]

In this evidentiary dispute, the reasons and policies which are the basis for the "substantial similarity" doctrine do not apply. The evidence involving rollovers of three dissimilar vehicles was offered by Suzuki to explain how rollovers occur. The introduction into evidence of these three dissimilar incidents for the purposes of illustrating the physical principles behind rollover accidents was not unduly confusing to the jury or prejudicial to the plaintiff. The evidence was not offered to reenact the accident; in fact, the vehicles involved, a Chevrolet Suburban, a Ford Escort, and a Jeep Wrangler, were pointedly dissimilar from the vehicle at issue here, a Suzuki Samurai. It was not an abuse of discretion for the trial court to conclude that whatever prejudice to Heath which might arise from the introduction of such evidence did not outweigh the probative value of such

---

[11]Typically, the "substantial similarity" doctrine operates to protect the defendant, but we hesitate to explain this rule or doctrine in terms that only favor one side of this type of dispute. A plaintiff could make use of the "substantial similarity" doctrine in, for example, a personal injury case where the defendant asserts the plaintiff was contributorily negligent in riding his bicycle, and the defendant seeks to admit evidence of plaintiff's past mishaps on a bicycle.

[12]The "substantial similarity" doctrine requires that before evidence of prior accidents or occurrences is admitted into evidence, the proponent of such evidence must show that "conditions substantially similar to the occurrence caused the prior accidents." *Hessen,* 915 F.2d at 649.

[13]"The admission of such evidence is also subject to the reasonable discretion of the trial court ... as to whether the prejudice or confusion of issues which may probably result from such admission is disproportionate to the value of the evidence." *Jones & Laughlin Steel Corp. v. Matherne,* 348 F.2d 394, 400 (5th Cir.1965).

evidence.[14]  Therefore, we hold that the trial court's admission of evidence of three instances of rollover accidents of other dissimilar vehicles was not an abuse of discretion in that the evidence was both relevant and not unduly prejudicial.

C. Suzuki's Cross appeal

Given that we affirm the district court, Suzuki's cross appeal is moot.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the United States District Court for the Southern District of Georgia.

AFFIRMED.

---

[14]Appropriately, the trial court in its order denying plaintiff's motion for new trial, balanced the probative value of the evidence against the prejudice to Heath posed by the admission of evidence.  The trial court noted that the evidence complained of comprised only six pages of more than a thousand pages of trial testimony, thereby indicating that any prejudicial impact was minimal.  Additionally, we note that the trial court instructed the jury during the testimony of Carr that it could "weigh the reliability of what he [Carr] says based upon the fact" that the vehicles are dissimilar.  This cautionary instruction further served to minimize the possible prejudicial impact of this evidence.