883 So.2d 902 (2004)
Guerry Jean JACQUES, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-11.
District Court of Appeal of Florida, Fourth District.
October 6, 2004.
*903 Carey Haughwout, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, and Guerry Jean Jacques, pro se, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Donna M. Hoffmann, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
The issue presented in this appeal from convictions of attempted first degree murder and shooting into an occupied vehicle is whether the trial court's remarks rebuking the defense attorney for what the court thought was an erroneous recitation of evidence amounted to fundamental error. Because the trial court's comments went to the very heart of the defense, we hold that fundamental error occurred and reverse.
Appellant, Guerry Jean Jacques, was charged with attempted first degree murder of both Sonny Hilaire and his girlfriend Natacha Fondrose. The incident in question occurred when Hilaire and Fondrose went to a house party at which Jacques was in attendance. Both Fondrose and Hilaire were drinking at the party. Fondrose was told by another partygoer that Hilaire and Jacques were arguing. She confronted Jacques who told her not to worry about it. Fondrose and Hilaire left shortly thereafter in Fondrose's vehicle. As she drove away, Fondrose stated that she did not see Jacques, but in a statement to the police the day after the incident, she said that as she turned at an intersection, she saw Jacques get out of his truck and stand by the door with something in his pocket. Fondrose then heard shots. Hilaire told her that he had been shot and instructed her to get down and drive him to the hospital. On the way to the hospital, *904 Fondrose was stopped by a police officer. She told the officer, "This guy Guerry shot my boyfriend," at which point the officer called 911.
At trial, Fondrose testified that although it was dark at the time and she did not see Jacques, she told the police that Jacques was the shooter because of the argument that had occurred earlier in the evening. However, after all the hysteria died down, Fondrose decided she was not sure who the shooter was. She testified to this in a deposition taken by defense counsel four months after the shooting.
For two months prior to the trial, Fondrose was living with the long-time girlfriend of Jacques, Tatiana Florisma. On cross-examination by the state, Fondrose denied that the fact she and her baby were living with Jacques's girlfriend had any bearing on her testimony. She said no one threatened her to change her story; her change of mind occurred before she moved in with Florisma. Fondrose also stated that prior to the deposition, Hilaire told her that he was not sure who the shooter was.
On re-direct the court granted the state's request to have Fondrose declared a hostile witness. The state impeached Fondrose's change of testimony with her statement given to police. In that statement, Fondrose said the shooter was a couple of feet away. Now she claimed that she did not remember anything about the shooter. Although she testified on cross-examination that Hilaire was probably drunk on the night of the incident, she told the police that night that he did not appear drunk to her.
Hilaire also testified at trial and identified Jacques as the shooter. The officers who investigated all testified that Fondrose and Hilaire each identified Jacques as the perpetrator of the crimes against them.
After the state rested, Jacques called his girlfriend, Florisma, who testified that she picked Jacques up from the party on the night of the incident and they went to a club and then to a restaurant. They were together until 5:30 a.m. A friend who accompanied them to the bar that night also testified that they were all together.
In closing argument, Jacques's counsel was discussing Fondrose's testimony. Fondrose's recantation of her statements identifying Jacques to police the night of the shooting was obviously crucial to his defense. The following unobjected-to comment was made:
Now one of the fundamental things that [Fondrose] said and I think that you believed her, she said she was drinking too. She said that everybody at the party was having fun and the liquor was just going down. And the State called Natacha Fondrose and the State doesn't like what she has to say, she's a hostile... witness to them, but did the State give you any real reason to demonstrate that honest reflection of what she observed... that night. Remember she was drinking at the party too. She suffers from impairment from drinking just as anyone else does. Even Detective Healey said that he could tell that she had been partying that evening.
Now the difference between [Fondrose] and [Hilaire] is when [Fondrose] sobers up [she] considers what she saw and more importantly what she didn't see. She says, wait a minute. I'm not sure. That was an honest assessment by a person who frankly has no reason to lie, no reason to lie, no bias at all, no bias to help him out, no bias to hurt [Hilaire]. Remember, she first went on record and said she wasn't sure who the shooter was in August of 1999, and at that time she was still [Hilaire's] girlfriend. She *905 was in fact pregnant with her now eight month old baby that is also [Hilaire's] baby, and at the time she wasn't living with the Defendant's girlfriend. This a year prior to her moving in with Tatiana. What is her basis to say in August of 1999, I'm not sure who the shooter is. There is no bias. There is no bias to help out the Defendant at that point in time. The whole suggestion that she's moved in with the girlfriend and how her story
The Court: That's not what she said and that's not what the record shows.
[Defense]: August of 1999, she was already saying, hold on I'm not so sure. Sheeven though their suggestion is that they discussed the case with Tatiana as [the State] suggested. That doesn't change the fact that she had already said that she wasn't sure who the shooter was in August of 1999. I suggested that if there's anybody's testimony to believe in this case who testified from this, that witness stand as non expert or as witnesses is Natacha Fondrose is because she doesn't have anything to gain with her testimony before you.
(Emphasis added).
Appellant claims that the court's improper comment was a critical comment on evidence going to the foundation of the defense and amounted to fundamental error. The state disagrees, indicating that the trial court was merely preventing a mischaracterization of the evidence from coming before the jury. We agree with appellant.
The defense was not mischaracterizing the evidence at all. Fondrose testified that she was still Hilaire's girlfriend when she gave the deposition at which she first stated that she was unsure of who the shooter was. She did not move in with Jacques's girlfriend for another year. For the trial court to accuse defense counsel of misrepresenting the evidence not only cast counsel in a poor light in front of the jury but, more importantly, supported the state's argument by implying to the jury that, in the court's view, Fondrose was a biased witness.
Section 90.106, Florida Statutes (1999), states that a trial "judge may not sum up the evidence or comment to the jury upon the weight of the evidence, the credibility of the witnesses, or the guilt of the accused." As we noted in Brown v. State, 678 So.2d 910, 911 (Fla. 4th DCA 1996),
The Law Revision Council's Note accompanying this provision of the Evidence Code explains as follows:
"The basis for this section was expressed in Hamilton v. State, 109 So.2d 422, 424 (Fla. 3d DCA 1959):
`The dominant position occupied by a judge in the trial of a cause before a jury is such that his remarks or comments... overshadow those of the litigants, witnesses and other court officers. Where such comment expresses or tends to express the judge's view as to the weight of the evidence, the credibility of a witness, or the guilt of the accused, it thereby destroys the impartiality of the trial....'"
While a judge may take some initiative to clear up uncertainties in the issues in a case, it is error for the judge to make any remark in front of the jury that might be interpreted as conveying the judge's view of the case or an opinion on the weight, character, or credibility of the evidence. See Simmons v. State, 803 So.2d 787 (Fla. 1st DCA 2001) (finding judge's comment, made while overruling defense counsel's mischaracterization of evidence objection, that "it is accurate and dead on point" *906 prejudiced the jury because it appeared to validate the state's argument).
In Brown, we found a trial court's comment in closing argument to be reversible error even absent an objection. In commenting on the evidence presented, defense counsel argued that the state's witnesses had lied. Without objection from the state, the judge interrupted and told defense counsel it was improper to call anyone a liar. The judge then said, "There is no evidence that anybody is a liar." 678 So.2d at 911. We concluded that the comments went directly to the credibility of the prosecution witnesses. Id When the entire case rested on the credibility of the prosecution witnesses, the trial judge commented on the very issue to be decided by the jury. We said:
For the trial judge to say in open court during final argument that there is no evidence that either witness had lied amounted to the trial judge's assessment of the very issue reposed in the jury. There is nothing in this record from which we could deduce that this comment had no effect on the jury. Indeed, given the preeminent role of the judge in the courtroom and the nature of the factual dispute given to the jury to resolve, it seems clear to us that his comment might well have affected the outcome.
Id. at 912 (footnote omitted). We think the comment in the present case is similar. The trial judge's comment, "That's not what she said and that's not what the record shows," was a comment on the weight of the evidence and credibility of the witness. Just as in Brown, this was a case based on the credibility of the witnesses, and Jacques's defense was predicated entirely on the believability of Fondrose's recantation of her statement identifying Jacques as the shooter. The trial court's comment indicated to the jury that there was evidence of bias on Fondrose's part. This comment supporting the state's position might well have affected the outcome of the case.
We conclude that in this case, in which the sole issue was the credibility of the witnesses, the trial court's improper commenting on the credibility of a witness constitutes fundamental error. "Fundamental error, which can be considered on appeal even without a proper objection or preservation in the lower court, is error which goes to the foundation of the case or goes to the merits of the cause of action." McKenzie v. State, 830 So.2d 234, 238 (Fla. 4th DCA 2002). As was noted in Kellum v. State, 104 So.2d 99, 104 (Fla. 3d DCA 1958), a case in which the court reversed because of prejudicial comments by the trial court that were not objected to at trial:
Regardless of the proper intention of the court in making such remarks, in determining their effect on the jury we must consider that the high position which a judge holds in the scheme of the trial magnifies, in the minds of the jurors, the meaning of comments by the judge, to which he himself may not attach particular importance. Thus, remarks of the court which the jury may consider as expressing the judge's view or feeling about the case, or about the defendant or the testimony or credibility of a witness, may be prejudicial error, where the credibility of the defendant and the witnesses is especially material, as it was here, in view of the strong conflicts in the evidence.
We therefore reverse for a new trial. We affirm as to the other issues raised.
GUNTHER and TAYLOR, JJ., concur.