52 So.3d 31 (2010)
MITSUBISHI MOTORS CORPORATION, Appellant,
v.
Peter LALIBERTE, as Personal Representative of the Estate of Scott T. Laliberte, deceased, Appellee.
No. 4D08-2211.
District Court of Appeal of Florida, Fourth District.
December 15, 2010.
Rehearing Denied February 15, 2011.
*32 Wendy F. Lumish and Jeffrey A. Cohen of Carlton Fields, P.A., Miami, for appellant.
*33 Julie H. Littky-Rubin of Clark, Fountain, La Vista, Prather, Keen & Littky-Rubin, LLP, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
PER CURIAM.
We grant the plaintiff's motion for rehearing, vacate our prior opinion, and issue this opinion in its place. Having taken a second comprehensive review of the arguments and record, we now affirm.
The defendant, an auto manufacturer, appealed a multi-million dollar judgment, which resulted from the tragic death of the plaintiff's son. Two issues were raised. The first concerned the trial court's remarks to the jury during the jury's inspection of two exemplar vehicles. The second concerned the trial court's exclusion of statistical information and demonstrative evidence to be used during the testimony of the defense experts.
The plaintiff's son was a front seat passenger of a 2000 Mitsubishi Nativa, a sport utility vehicle, when the driver lost control, causing the vehicle to roll over multiple times. The passenger was partially ejected through the rear passenger window, causing his head to come in contact with the ground. He died from those injuries. The driver remained inside the vehicle and sustained no permanent injuries.
The decedent's father, and personal representative of the estate, filed a products liability action against Mitsubishi, seeking compensatory and punitive damages. After numerous pre-trial motions and hearings, many of the claims were resolved, leaving for trial the plaintiff's claim of design defects in the passenger seat belt and seat back.
The court heard several motions in limine prior to trial, among them the plaintiff's sixty-seven page Second Motion in Limine, which sought the exclusion of some defense expert testimony, statistical information, and demonstrative evidence. Numerous grounds for the exclusion of the evidence were raised including hearsay, lack of substantial similarity, relevance, confusing and misleading evidence, and that the evidence was more prejudicial than probative. The trial court ultimately entered an order granting the motion in part. The court's order stated:
ORDERED AND ADJUDGED that Plaintiff's Second Motion in Limine is granted, in part. "Granted", for purpose of the Motion in Limine addressed in this Order, shall mean that the parties and their counsel shall not refer to or attempt to introduce into evidence, or otherwise place before the jury, the matter referred to without first proffering the good faith basis to believe the matter is relevant and otherwise admissible outside the jury's presence. Defendants shall not refer to or offer into evidence, either orally or in writing, NHTSA data from the Fatality Analysis Report System (FARS) and the National Accident Sampling System (NASS), or other similar statistical information, without first establishing outside the jury's presence that the evidence is both relevant and admissible. The Court notes that "substantial similarity" is determined in the context of the specific issue for which the evidence is offered. Thus, other occurrences may be sufficiently similar to be relevant on whether it was reasonably foreseeable that an SUV would be involved in a multiple roll-over accident, but insufficiently similar to be relevant on whether a particular accident was survivable. It is further
ORDERED AND ADJUDGED that Defendants may not use a videotape or photograph of the spit test as a demonstrative aid. If Defendants intend an *34 expert to testify about the spit test and its affect [sic] on his opinion, Defendants shall so notify Plaintiff's counsel prior to the testimony and Plaintiffs may request a voir dire examination of the expert under Florida Statute § 90.705(2) prior to the testimony.
Rather than exclude the evidence entirely, the trial court set the stage for the trial where the defendant could raise the evidentiary issues subject to laying the proper foundation for admission of the evidence and establishing its relevancy.
During the trial, the court ultimately excluded the statistical information and demonstrative evidence. In excluding the spit test, the court stated:
As to the other items, there are a host of objections, but the one I find most compelling is that these are alleged demonstrative aids with different crash scenarios, different seats, different forces. If the purpose was truly to demonstrate to the jury the physical forces at play, there are ways that could have been that that information could have been conveyed by demonstrative aids that didn't have the overwhelming possibility of misleading the jury.
With regard to the admission of the other tests at trial, the court ruled:
And he can certainly say that that's his opinion, but the same way he couldn't talk about the spit experiments, we're not getting him to describe every experiment he's done and use that as a way to put what otherwise would be impermissible information in front of the jury.
The court also found the plaintiff's hearsay objection to the statistical information well-founded.
During the plaintiff's case, the court allowed the jurors to inspect two Mitsubishi Montero sport utility vehicles.[1] While the jurors were inspecting the vehicles, both front passenger seat backs failed to fully recline. It was later learned that this problem was caused by a coin in each of the seats' reclining mechanisms.[2]
When the first problem arose, counsel agreed the court should instruct the jury that there was a problem with the passenger seats and that they should operate like the driver seats. When instructing the jurors, the trial court told them there was a defect in the right front passenger seat. Moments later, when the jurors reported the right front seat back in the other exemplar vehicle did not recline, the judge again conferred with the lawyers. They again agreed that the court could indicate that the seat was supposed to operate in the same manner as the driver's seat. For a second time, the trial judge used the word "defect" in giving the instruction. After the second instruction, one of the jurors questioned what the judge meant by the use of the word "defect." The judge responded, "No, it simply doesn't operate or something similar to that."
Mitsubishi moved for a mistrial, arguing the trial court's use of the term "defect" was highly prejudicial because it was a comment on the evidence and the ultimate issue in dispute. The court denied the motion, finding there was no reasonable doubt the jurors understood the coin in the recliner mechanism was wholly unrelated *35 to the alleged design defect. The court then gave the following curative instruction.
Immediately before lunch on Thursday you viewed exemplars of both the 2000 and 2000.5 Mitsubishi Montero. The exemplars were provided by Plaintiff. As you know, the right front seats in both vehicles did not recline. We have since learned that a quarter was located in the inboard inertial locking mechanism of each seat that prevented the seats from reclining. Mistakenly during the view, I referred to the failure of the right front passenger seats to recline as a defect. This was a misstatement by me. Obviously the inboard inertial locking mechanism did not operate correctly because there was a quarter in each mechanism preventing proper operation. Simply put, the exemplars' right front passenger seats' inability to recline during your inspection was caused solely by the placement of the coins which operated as stops, and had nothing to do with the mechanism's design or manufacture. I now instruct you, that when considering the evidence in this case, you must completely disregard the issue with the right front passenger seats' on the exemplars inability to recline. If you anticipate any problem following this instruction, please raise your hand.
No member of the jury responded either verbally or by hand gesture.
Mitsubishi argues the trial court's comments constituted a statement on the evidence and the ultimate issue to be decided, in violation of section 90.106, Florida Statutes (2008). See also Jacques v. State, 883 So.2d 902, 905 (Fla. 4th DCA 2004). Mitsubishi seeks to have us apply a de novo standard of review. In contrast, the plaintiff argues that the proper standard of review is abuse of discretion.
Because the issue involves the trial court's ruling on a motion for mistrial, we review this issue under an abuse of discretion standard. See Goodwin v. State, 751 So.2d 537, 546 (Fla.1999). Under that standard, inadvertent and adequately-cured comments by a judge are not grounds for a mistrial. See Baker v. State, 578 So.2d 37, 38 (Fla. 4th DCA 1991).
The record before us reveals the trial court's reference to a "defect" in the seats was inadvertent and not calculated to serve as a comment on the evidence. Moreover, the trial court quickly provided a curative instruction. When the court inquired if any juror was unable to follow the instruction, no juror responded affirmatively. We therefore hold the trial court did not abuse its discretion in denying Mitsubishi's motion for mistrial.
Mitsubishi next claims the trial court's exclusion of the statistical information and demonstrative evidence left it stranded with bare expert opinions "drained of force and color." Mitsubishi argues the plaintiff capitalized on these evidentiary rulings during its closing argument, and implied the defense expert opinions were not supported by science. In sum, Mitsubishi argues the exclusion of the evidence resulted in extreme prejudice, entitling it to a new trial. We disagree.
The plaintiff alleged that the front passenger seatbelt was defectively designed because it allowed too much slack in the belt during the accident and the seat back was defective because it yielded rearward. The combination of these defects allowed the passenger to be partially ejected, resulting in his death.
The front passenger seatbelt incorporated an energy management ("EM") or energy *36 absorbing ("EA") stitched loop system.[3] This stitched loop seatbelt system was designed to allow ten inches of seatbelt webbing, which was folded over and sewn together, to break loose and better manage the occupant's movement in frontal impacts.
The vehicle's seat backs were designed with an outboard recliner mechanism, allowing the seat to recline or straighten to a comfortable position. In a rear impact, the seat back was designed to yield rearward in response to force and dissipate energy. The passenger seat back also had a unique inertial lock on the inboard side that was designed to engage in the event of a significant impact that resulted in rearward-moving forces.
At trial, Mitsubishi argued that the passenger's injuries were caused by the severity of the accident and not by any design defect in the seatbelt or seat back. In fact, the defense expert testified that this was the most severe rollover accident he had ever seen. The vehicle rolled at least three and a half times. The last roll involved a rear impact that vaulted the vehicle. He opined it was during this last roll that the seatbelt expanded and the passenger sustained the injury leading to his death.
Mitsubishi's experts testified that, even if Mitsubishi had utilized the other seatbelt systems suggested by the plaintiff's experts, the passenger still could have been ejected from the vehicle and suffered the same injuries. Moreover, the EM loop design provided safety features not present in the other designs. With regard to the seatback, Mitsubishi's experts opined that: (1) its passenger seat design was safe; (2) the plaintiff's alternative seat design posed greater dangers to the occupant; and (3) the seat conformed to industry custom and standards.
To support these conclusions, Mitsubishi attempted to introduce statistical information concerning other rollover accidents and demonstrative evidence consisting of photographic slides and a video showing various tests performed on passenger seats of other makes and models. At issue is whether the trial court's exclusion of this evidence constituted reversible error.
Mitsubishi's seatbelt design and bio-mechanic experts conducted spit tests, in which a surrogate of the passenger's size was placed in the front passenger seat of a similar vehicle with a seatbelt that did not have the EM loop. The seat was reclined, and the car was essentially turned on a spit. The tests were utilized to demonstrate the movement of the occupant and to show how far the body can reach even when a seatbelt without an EM loop is incorporated into the seatbelt design.
The plaintiff argued that the spit tests were misleading and prejudicial because they would lead the jurors to believe the passenger was partially ejected in the same way. The excluded demonstration used a body moving on command rather than in response to an unexpected dynamic rollover. The trial court excluded the spit tests, finding they had an overwhelming possibility of misleading the jury. Significantly, Mitsubishi did not argue that its experts relied on these tests to render their opinions. Even so, the trial court permitted Mitsubishi's experts to opine that the passenger would have died anyway, regardless of the EM loop.
To counter the opinion of the plaintiff's expert that the seat backs failed to perform in a manner to prevent the passenger's death, Mitsubishi's experts performed pull tests on several different vehicles *37 to show how much force it took to cause those vehicles' seats to deform. Mitsubishi sought to introduce photographs of these tests and a chart summarizing the results.
In opposition, the plaintiff countered that the pull tests were not comparable because they were performed on dissimilar vehicles and seats under different crash scenarios. Once again, there was no claim by Mitsubishi that its experts relied on the tests for their opinions. The tests were simply offered for demonstrative purposes.[4] The court prohibited Mitsubishi from introducing photographs of the pull tests and the chart.
Using a different vehicle, passenger seat, and a test dummy with different physical characteristics than the passenger, Mitsubishi sought to introduce sled tests, which simulated a rear-impact collision at thirty-two miles per hour. Mitsubishi argued that the sled tests would show the danger of a stiffer seat back.
In opposition, the plaintiff argued the dissimilarities between the actual conditions and test conditions rendered them irrelevant. Although the court allowed Mitsubishi's expert to testify to the strength of the Nativa's seat for certain model years, the court prohibited the expert from showing slides of the actual sled tests or their results.
Mitsubishi sought to introduce evidence of "301 testing" to show that a variety of seats in different vehicles tested by NHTSA perform in a similar manner to the seat in the accident vehicle. In opposition, the plaintiff argued the test was used to measure fuel system integrity. The trial court excluded the evidence on the grounds that the test was not relevant.
On these four evidentiary rulings, the parties disagree as to our standard of review. Mitsubishi argues that our review is de novo because the trial court's conclusion that the demonstrative evidence was highly prejudicial arose out of the court's misapplication of the doctrine of substantial similarity. See Shands Teaching Hosp. & Clinics, Inc. v. Dunn, 977 So.2d 594, 598 (Fla. 1st DCA 2007). The plaintiff responds the trial court engaged in a classic section 90.403, Florida Statutes (2008)[5], analysis, and ultimately excluded the demonstrative aids due to the "overwhelming possibility of misleading the jury." Thus, the plaintiff argues the proper standard of review is abuse of discretion.
Because the trial court's exclusion of the statistical information and demonstrative evidence was based upon a combination of objections, including relevance, hearsay, and to a lesser extent prejudice, the appropriate standard of review is abuse of discretion. See Trees ex rel. Trees v. K-Mart Corp., 467 So.2d 401, 403 (Fla. 4th DCA 1985).
*38 The trial court conducted a number of hearings in connection with the admission of Mitsubishi's demonstrative aids. The clearest indication of the court's ruling on the spit tests and statistical information is found in the transcript and order on the plaintiff's Second Motion in Limine. There, the court stated its concern that Mitsubishi be able to establish "the matter is relevant and otherwise admissible outside the jury's presence." The court indicated that whether the evidence was substantially similar would have to be determined "in the context of the specific issue for which the evidence is offered." The court also expressed concern over the plaintiff's hearsay objection to the statistical information. Lastly, the court instructed Mitsubishi to advise the plaintiff if the tests would "affect" an opinion.
At trial, the court acknowledged that, while there were a host of objections, the most compelling was that the demonstrative aids contained different crash scenarios, different seats, and different forces compared to those present in the accident. The court went on to conclude that these differences made the evidence less probative or relevant. Therefore, the court concluded that admission of such evidence would be highly prejudicial. With regard to the statistical information, the court found the plaintiff's hearsay objection well-taken.[6]
We take a moment to address the substantial similarity test so heavily relied on by the plaintiff because it obfuscated the other valid objections made to the admission of the demonstrative evidence. Generally, the doctrine of substantial similarity applies in products liability claims when a party attempts to introduce evidence of prior accidents, to recreate the accident involving the defendant's product, to show notice of defect, magnitude of the danger involved, the defendant's ability to correct a known defect, or the lack of safety for intended uses. See Tran v. Toyota Motor Corp., 420 F.3d 1310, 1316 (11th Cir.2005).
Here, Mitsubishi admittedly did not attempt to recreate the accident. Instead, Mitsubishi attempted to "demonstrate" body movement in a rollover accident, the advantages of its seat back and seatbelt design in other types of accidents, and the unique nature of the movement of this vehicle during the rollover accident. "The substantial similarity doctrine does not apply to situations . . . where the evidence is `pointedly dissimilar' and `not offered to reenact the accident.'" Tran, 420 F.3d at 1316 (quoting Heath v. Suzuki Motor Corp., 126 F.3d 1391, 1396-97 (11th Cir.1997)).
The plaintiff's heavy reliance on the substantial similarity argument blurred the true nature of the trial court's ultimate evidentiary rulings. In actuality, the trial court relied upon relevance, hearsay, foundation, and prejudice in deciding what demonstrative evidence would be admitted. Having completed a second, comprehensive review of the pleadings, motions, and transcripts of the pre-trial proceedings and trial, we cannot say that the trial court abused its discretion in making these decisions.
For this reason, we withdraw our previously issued opinion, and substitute this opinion in its place. The judgment is affirmed.
Affirmed.
MAY and DAMOORGIAN, JJ., concur.
CIKLIN, J., concurs specially with opinion.
*39 CIKLIN, J., concurring specially.
I wholeheartedly concur with the majority but write separately to underscore the broad discretion afforded to trial courts in these types of matters.
The record reveals that the trial court engaged in a painstaking process with respect to its analysis of Mitsubishi's proffered demonstrative aids. Had the trial court erred in the manner in which Mitsubishi describes, all of Mitsubishi's proffered demonstrations would have been indiscriminately excluded in wholesale fashion. This is not what occurred and after extensive considerationand hours of hearingsthe trial court did permit Mitsubishi to present abundant evidence, demonstrative and non-demonstrative alike, much of it over the plaintiff's numerous objections. While the trial court did consider the substantial similarity rule when culling through the proffered evidence, that was but one consideration and ultimately not the basis of its evidentiary rulings. The trial court, when excluding certain photographs, charts and video clips (but yet permitting, for the most part, Mitsubishi's experts to verbally describe the content of these audio visual devices), cited "the overwhelming possibility of misleading the jury."
All relevant evidence must successfully pass through the gate of section 90.403, Florida Statutes, before being presented to the jury. Indeed, section 90.403 renders otherwise relevant evidence inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or the possibility that the jury may be misled. When raised as an issue, the trial court is required to weigh the logical strength of the proffered evidence to prove the material fact or issue against the other facts in the record and balance it against the strength of the reason for exclusion. In both a pretrial hearing on a motion in limine and again at the time of trial, the lower court ultimately ruled that due to the "overwhelming possibility of misleading the jury" there was a need to exclude certain Mitsubishi demonstrative evidence.
Overall, broad discretion rests with the trial court in matters relating to the admissibility of relevant evidence and that ruling will not be overturned absent a clear abuse of discretion. As noted by this court in Trees v. K-Mart Corp., 467 So.2d 401, 403 (Fla. 4th DCA 1985):
The determination of relevancy is within the discretion of the trial court. Ferradas v. State, 434 So.2d 24 (Fla. 3d DCA 1983); Nelson v. State, 395 So.2d 176 (Fla. 1st DCA 1980). Where a trial court has weighed probative value against prejudicial impact before reaching its decision to admit or exclude evidence, an appellate court will not overturn that decision absent a clear abuse of discretion. Brown v. United States, 409 A.2d 1093 (D.C.App.1979); see also Kramas v. Security Gas & Oil, Inc., 672 F.2d 766 (9th Cir.1982), cert. denied, 459 U.S. 1035, 103 S.Ct. 444, 74 L.Ed.2d 600; Miller v. Poretsky, 595 F.2d 780 (D.C.Cir.1978); Rust v. Guinn, 429 N.E.2d 299 (1981); see generally Blanco v. State, 452 So.2d 520 (Fla.1984); Welty v. State, 402 So.2d 1159 (Fla.1981); Morales v. State, 451 So.2d 941, 943 (Fla. 5th DCA 1984).
"The weighing of relevance versus prejudice or confusion is best performed by the trial judge who is present and best able to compare the two." Sims v. Brown, 574 So.2d 131, 133 (Fla.1991).
As this court concluded in Trees, "[w]hether, under the facts of this case, the court's ruling struck the proper balance between probative value and unfair prejudice is a matter about which reasonable *40 people could differ." 467 So.2d at 403.
Simply put, the trial court sensitively balanced the relevance of Mitsubishi's demonstrative aids against the danger of unfair prejudice and confusion and made the right callsor at least made the calls that were best performed by the person wearing the boots on the ground.
"[U]nder the abuse of discretion standard of review there will be occasions in which we affirm the [trial] court even though we would have gone the other way had it been our call." Rasbury v. Internal Revenue Serv. (In re Rasbury), 24 F.3d 159, 168 (11th Cir. 1994). . . . Given our deferential standard of review, however, we cannot say that the [trial] court's decision fell outside its permissible "range of choice." United States v. Kelly, 888 F.2d 732, 745 (11th Cir.1989).
Tran v. Toyota Motor Corp., 420 F.3d 1310, 1315-16 (11th Cir.2005).
NOTES
[1] The Nativa was the accident vehicle. The Nativa and Montero are substantially the same vehicle.
[2] As a result of the incident that occurred during the demonstration, depositions were taken, the vehicles were inspected, and hearings held to determine who was responsible for the coins in the operating mechanisms of the demonstration vehicles. It was ultimately decided that the incident was unintentional.
[3] These terms were used interchangeably at trial.
[4] Demonstrative evidence is admissible only when it is relevant to the issues in the case. Such evidence is generally more effective than a description given by a witness, for it enables the jury, or the court, to see and thereby better understand the question or issue involved. For this reason it is essential, in every case where demonstrative evidence is offered, that the object or thing offered for the jury to see be first shown to be the object in issue and that it is in substantially the same condition as at the pertinent time, or that it is such a reasonably exact reproduction or replica of the object involved that when viewed by the jury it causes them to see substantially the same object as the original.

Harris v. State, 843 So.2d 856, 863 (Fla.2003) (quoting Alston v. Shiver, 105 So.2d 785, 791 (Fla. 1958)).
[5] Section 90.403 states in pertinent part: "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."
[6] Even with these rulings, Mitsubishi was permitted to assemble an actual life-size model of the Nativa in the courtroom, which Mitsubishi's experts utilized while testifying.