**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

—————————————

No. 23-11607

—————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

STEFAN EBERHARD ZAPPEY,

*Defendant-Appellant.*

—————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 3:21-cr-00014-TCB-RGV-1

—————————————

Before ROSENBAUM, ABUDU, and WILSON, Circuit Judges.

ABUDU, CIRCUIT JUDGE:

Stefan Eberhard Zappey appeals his conviction, after a jury trial, for multiple counts of aggravated sexual abuse of and abusive sexual contact with children under the age of twelve, 18 U.S.C. §§ 3261, 2241(c), 2244(a)(5). Zappey, a former

elementary school teacher, was found guilty and sentenced to life in prison for sexually abusing his students. On appeal, Zappey challenges several of the district court's evidentiary rulings which excluded certain expert testimony and, in his view, undermined his defense. After a thorough review of the record and the parties' briefs, and with the benefit of oral argument, we affirm Zappey's convictions.

## I.    FACTUAL BACKGROUND

For twenty years, the U.S. Department of Defense ("DOD") employed Zappey to teach German language immersion classes to children at Patch Elementary School, an American school that was part of a U.S. military base near Stuttgart, Germany. As part of the language immersion program, Zappey taught students in first through third grade. His classes were recognized as excellent: Parents and students praised his immersion program and, in 2007, Zappey was selected from among all teachers at DOD schools in Europe for a "Teacher of the Year" award. Students and teachers described Zappey as an affectionate teacher who would often hug, pat, touch, and hold hands with students. Teachers also reported that Zappey would run his hands through students' hair, caress their backs and, sometimes, have a student sit on his lap during story time.

In 2019 and 2020, four women reported that Zappey had sexually assaulted them when they were students in his class. The military investigated those reports. Through forensic interviews, military investigators determined that, from 2006 to 2010, Zappey

molested four students under the age of twelve. These women reported that, when they were students, Zappey repeatedly placed his hands under their clothes and touched their genitals and buttocks during the course of regular classroom instruction, as well as during private, one-on-one reading sessions.

## II.    PROCEDURAL HISTORY

### A. Indictment

In October 2022, a federal grand jury indicted Zappey on four counts of aggravated sexual abuse of a child, in violation of 18 U.S.C. § 3261 and § 2241(c), and sexual abuse and abusive sexual conduct involving minors, in violation of 18 U.S.C. § 2244(a)(5). The indictment identified four minor victims.[1]

Before trial, the government moved to exclude testimony from Zappey's expert witnesses, Dr. Christopher Tillitski and Dr. Jeffrey Neuschatz, under Federal Rule of Evidence 702. Dr. Tillitski and Dr. Neuschatz planned to testify about the reliability of childhood memories. The government argued that expert testimony about memory science would improperly opine on the credibility of the identified victims and other witnesses and, thus, undermine the jury's role. The district court ruled that both doctors could provide general testimony but precluded the doctors from testifying specifically about the witnesses in the case.

---

[1] In order to protect the identity and privacy of these victims, we refer to them by their initials throughout this opinion.

### B. Trial Testimony

The district court held a five-day jury trial. During the trial, the government called multiple witnesses to testify: the four women identified as victims in the case; two other women who alleged that Zappey had molested them as well, who were not named in the indictment; two former Patch Elementary teachers; a U.S. military dental assistant who provided presentations at Patch Elementary; an FBI agent involved in Zappey's investigation; and an expert witness, Dr. Sharon Cooper, a developmental and forensic pediatrician who worked with adults who were victims of crime during childhood.

Each of the victims testified as to their own experiences as students in Zappey's class. As Zappey taught first through third graders, the victims were between six and nine years old during their encounters with Zappey. While their testimonies relied heavily on their own recollections and memories of their experiences with Zappey from more than a decade before, their testimonies largely corroborated one another, with each witness recounting similar instances of abuse from Zappey.

The first witness, victim A.D., was a second grader in Zappey's class from the time she was seven to eight years old. A.D. testified that during recess, when other students were out playing, Zappey frequently would have her stay in the classroom to practice her reading. According to A.D., on at least three occasions during these one-on-one reading lessons, Zappey molested her by touching her inappropriately, both over and under her clothing.

A.D. further testified that she did not report the abuse to anyone at the time because at that young age she did not associate Zappey's behavior as sexual abuse. Instead, it was not until A.D. watched a video about the Catholic Church's sex abuse scandal when she was in the ninth grade that she realized Zappey's conduct towards her was sexual abuse. However, she still did not report his behavior because of how much time had elapsed and her community's adoration of Zappey.

On cross-examination, A.D. testified that when she first met with the investigating special agent, she told him that she had forgotten the whole experience entirely and it was watching the documentary about the Catholic Church which triggered her memory. On re-direct, A.D. clarified that when she previously told the agent that she had "forgotten, it wasn't necessarily like in [her] head that [she] had forgotten it. [She] just . . . did not realize what had happened to [her] . . . [until] watching that video kind of put a name to an experience."

Victim C.M. testified that Zappey molested her when she was seven and eight years old. C.M. recounted that during story time, Zappey would have her sit in front of him while he read to the class and, in the presence of other students, touched her inappropriately. C.M. also testified that she observed Zappey molest another student, victim M.H., during a group story time. C.M. stated that she did not report Zappey's sexual abuse because she did not comprehend that his behavior was inappropriate. C.M. further testified that, although she did not forget Zappey's actions

towards her, it was not until a major child abuse scandal broke in her competitive gymnastics community when she was 16 years old that she finally realized that Zappey had been molesting her. On cross-examination, C.M. acknowledged that she previously had told an investigator that she had "block[ed] things out of [her] mind," but clarified that she never lost the memories of Zappey's abuse.

A third victim, A.J., testified that when she was eight and nine years old, Zappey would regularly touch her private parts during class. A.J. stated that she did not report Zappey's behavior to anyone at the time because she did not understand how inappropriate it was. A.J. finally reported Zappey's abuse to her mother when she was in the tenth grade, but her mother, who was also a teacher at Patch Elementary school, did not believe her. Because of her mother's reaction, A.J. did not report the sexual abuse to law enforcement. However, she stated that she never forgot what Zappey had done to her.

The fourth witness, victim M.H., testified that Zappey molested her when she was a student in his class, from 2008 to 2010, when she was between six and nine years old. M.H. stated that the first time Zappey touched her genitals under her clothes, she was in the first grade and did not realize that his behavior was inappropriate. When she was in the seventh grade, M.H. watched a video at school about inappropriate touching, which further confirmed to her that Zappey had sexually abused her. After watching the video, M.H. told her mother that Zappey touched her

inappropriately several times when she was a student in his class, but did not report it to the police because she was not ready to share what Zappey had done to her with strangers and was worried she would not be believed.  When questioned about discrepancies in the details of her prior testimony, M.H. responded that while she could not recall every detail from every single time Zappey molested her, she did have distinct memories from the encounters. She further clarified that while she frequently said her "memory clicked" when recounting Zappey's abuse, that term did not describe a "remembering," as she never forgot the abuse, but was instead an eventual realization that what Zappey had done to her was wrong.

In addition to the victims named in the indictment, the government called two former students, C.H. and A.R., who each recounted instances of Zappey inappropriately touching them when they were students in his German language immersion class.  A.R. reported Zappey's abuse to her mother soon after it occurred, and her parents confronted Zappey.  A.R.'s mother testified that when questioned, Zappey denied any wrongdoing.  The jury also heard testimony from two former Patch Elementary teachers, as well as a dentist who treated students at the school, who testified that they witnessed Zappey touching his female students inappropriately, including caressing their hair, hugging them constantly, having them sit in his lap, and rubbing their backs.  Each witness also testified that they reported Zappey's behavior to school administrators, including the principal.

Following the witness testimony, the government called its expert, Dr. Cooper.  Dr. Cooper testified both about the reasons that most children delay disclosing sexual abuse suffered in childhood until they are adults and about the impact of "grooming"—a behavior where an adult befriends a child with the goal of later molesting them—on delaying disclosure of sexual abuse.  She explained that children who have been molested often do not recognize the interactions as "some type of sexual encounter."  She further stated that, because children often do not recognize inappropriate touching as a sexual encounter, they do not disclose it.  Additionally, she testified that, because of the relationship that children have with their offenders, they are less likely to recognize the harmful impact of the grooming behavior.  She opined that children who are groomed are less likely to immediately disclose the abuse because they do not "yet understand that they have been [sexually] exploited[.]"  She further explained that, based on research, "80 percent or higher" of children who are sexually abused during childhood do not report the behavior.

Dr. Cooper also testified about forensic interviewing and memory.  She indicated that memory does not fade over time with survivors of child sexual abuse and that triggers, such as forensic interviewing, merely help them "recover their information."

On cross-examination, Zappey's counsel extensively questioned Dr. Cooper about the science of memory, although she was not an expert in that subject, including the role of interviews in triggering memory.  Dr. Cooper agreed that, when dealing with the

delayed disclosure, it was necessary to rely on the memory of the person disclosing and conceded that "in trauma, many, many patients [did not] have a good recollection of what may [have] happen[ed]." Based on her review of the literature, Dr. Cooper stated that there were many factors at play in determining whether or not an individual would be able to recall an event, such as how traumatized they were. Nevertheless, Dr. Cooper acknowledged the importance of memory and explained the line of questioning experts typically used in trying to ascertain a victim's memory.

### C. Evidentiary Challenges

As part of his case-in-chief, Zappey called Dr. Tillitski as his first witness. Dr. Tillitski testified about delayed disclosure, grooming, and memory formation and decay. Dr. Tillitski explained that a person may mistakenly recall false information, and opined that children are more likely to have inaccurate memories. When Dr. Tillitski began to testify about witness reliability, the government objected. The district court held a sidebar conference, during which the district court limited the scope of Dr. Tillitski's testimony, precluding any statements about eyewitness identification and the reliability of memory.

The district court ultimately excluded Dr. Tillitski's testimony about the reliability of a person's certainty in the accuracy of their memory, ways to independently verify memory, inconsistencies in memory verification as it related to the lack of signs of abuse and lack of physical proof of abuse, the impact of interviewing techniques on memory, memory gap filling, memory conflation, and

retention of inaccurate memories.  Lastly, it instructed Dr. Tillitski to refer to "tainted" memories as "inaccurate memories" and limited his testimony about memory cues and the likelihood that child molestation crimes occur in public.

However, the district court permitted Dr. Tillitski to testify about the topics the government's expert raised: grooming, delayed disclosure, and the difficulty children have in distinguishing between appropriate and inappropriate conduct.  The district court acknowledged that the government's expert testified that memory improved over time and, therefore, permitted Dr. Tillitski to discuss whether recall of memory improved over time, and to testify about how a memory cue can impact memory recall.  Consequently, Dr. Tillitski not only addressed the topics Dr. Cooper raised, but also told the jury that he reviewed Dr. Cooper's testimony, read the studies that she quoted from regarding delayed disclosure, and provided his own assessment of those studies.

Zappey then presented his next witness, Dr. Neuschatz.  However, Dr. Neuschatz's testimony was proffered outside the jury's presence because the district court ruled that Zappey failed to carry his burden of showing Dr. Neuschatz's testimony was proper and admissible.  Dr. Neuschatz proffered testimony about factors that cause false memories—a phenomenon he described as a person remembering experiencing an event that they did not actually experience.  He opined that independent verification was the only way to confirm a memory's accuracy and discussed the creation of false memories using eyewitness evidence and laboratory

research studies.  For instance, Dr. Neuschatz described studies where researchers convinced subjects that "they were attacked by a vicious animal" or "shook hands with Bugs Bunny at Disney" and after repeatedly asking the subjects to try and remember these events, some of the people came to believe they had experienced the events.  He opined that "true and false memories" are not experienced differently, relying on a research study where people were told that they had experienced a traumatic event—alien abduction.  The district court excluded Dr. Neuschatz's testimony completely.

The jury returned a guilty verdict on all eight counts against Zappey, and the district court sentenced him to life imprisonment. Zappey now appeals his conviction on the basis that the district court abused its discretion in limiting and excluding defense expert testimony.

## III.    STANDARD OF REVIEW

We review a district court's decision to exclude evidence for an abuse of discretion.  *United States v. Reeves*, 742 F.3d 487, 501 (11th Cir. 2014).  Under the abuse-of-discretion standard, we recognize that a district court has a range of permissible choices available to it.  *United States v. Barton*, 909 F.3d 1323, 1330 (11th Cir. 2018). We defer to a district court's decision regarding the admissibility of evidence unless it is manifestly erroneous.  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 152 (1999); *see also United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (*en banc*) (same).  A district court abuses its discretion when it applies an incorrect legal

standard or makes a clear error of judgment, such as basing its ruling on an erroneous view of the law, making clearly erroneous findings of fact, or following improper procedures in making its determination. *See, e.g.*, *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005); *United States v. Henderson*, 409 F.3d 1293, 1297 (11th Cir. 2005).

## IV.    DISCUSSION

The issue before us is whether the trial court properly excluded evidence on the grounds that the proffered testimony would not aid in the jury's deliberations and would have improperly opined on the witnesses' credibility. We start with Rule 702 of the Federal Rules of Evidence, which permits an expert witness to testify if, among other requirements,[2] their expertise helps the trier of fact to understand the evidence or to determine a fact in issue. *See Frazier*, 387 F.3d at 1259. District courts have a duty to act as gatekeepers who admit only such evidence as is sufficiently reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also Barton*, 909 F.3d at 1332–33. As it relates to expert testimony, courts must consider whether the expert testimony is necessary to the jury's understanding and has a scientific connection to the relevant inquiry to determine whether expert testimony helps determine a factual issue. *Daubert*, 509 U.S. at 591–92.

---

[2] The expert opinion must also include sufficient facts or data, be the product of reliable principles and methods, and reflect a reliable application of those principles and methods to the facts of the case. FED. R. EVID. 702.

Even when the admission of expert testimony satisfies *Daubert*, the district court may still, in its sound discretion, choose to exclude evidence that is inadmissible under other rules of evidence. *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1294 (11th Cir. 2022) (citing *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1331 (11th Cir. 2014)). Rule 403 of the Federal Rules of Evidence allows a court to exclude "relevant evidence if its probative value is substantially outweighed by its prejudicial effect." Given that expert testimony can carry "talismanic significan[ce]" for jurors, the district court must carefully weigh the helpfulness of such evidence to determining a factual matter against the possibility that it could mislead or confuse the jury. *Frazier*, 387 F.3d at 1263. Exclusion under Rule 403 is also appropriate where expert evidence is improperly time consuming or cumulative. *Id.* Expert testimony may be properly excluded, for example, when an expert opinion is not needed to clarify facts and issues of common understanding that jurors can understand without assistance, when evidence is cumulative, or when evidence is otherwise unnecessary. *See Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Fireman Ret. Sys. of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995). The party proffering the expert "bears the burden of establishing his . . . helpfulness" to the jury in resolving a factual or evidentiary dispute. *Knepfle*, 48 F.4th at 1294 (citing *Frazier*, 387 F.3d at 1260). Moreover, even where a district court errs in its evidentiary ruling, we respect its discretion as a gatekeeper of evidence by asking if the error was harmless, meaning whether there is a reasonable likelihood that the error affected the defendant's substantial rights or had a substantial influence on the outcome of

the case. *United States v. Langford*, 647 F.3d 1309, 1323 (11th Cir. 2011); *see also Henderson*, 409 F.3d at 1300 (collecting sources).

On appeal, Zappey argues that the district court abused its discretion when it limited the scope of Dr. Tillitski's testimony to matters the government's witness, Dr. Cooper, addressed, and completely excluded Dr. Neuschatz's proffered testimony. First, he contends that Dr. Neuschatz's testimony would have helped the jury decide the reliability of evidence Zappey's former students provided based on their childhood memories—the core evidence supporting the government's prosecution. He also argues that Dr. Neuschatz's testimony would have aided the jury in understanding the science behind memory, particularly how a memory may become inaccurate over time. Second, he maintains that the court's decision to cabin Dr. Tillitski's testimony to the topics that Dr. Cooper raised vitiated his defense because he could not fully present the scientific theories that undercut Dr. Cooper's statements.

The government responds that the district court properly limited Dr. Tillitski's testimony and excluded Dr. Neuschatz because their proposed expert opinions would not assist the jury in resolving the factual or evidentiary issues in dispute. In particular, the government argues that the excluded testimony addressed topics which fell within the common sense of the jury. Lastly, the government maintains that any error in excluding or limiting testimony was harmless. We take each argument in turn.

### A.  The District Court Properly Limited Dr. Tillitski's Testimony.

The party proffering the expert carries the substantial burden of establishing qualification, reliability, and helpfulness. *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1107 (11th Cir. 2005).  Given that we review the district court's decision under an abuse-of-discretion standard, Zappey must show that the district court applied the wrong legal standard or made a clear error of judgment when it determined that Dr. Tillitski's expert opinion, in part, did not help the jury to determine a fact at issue and improperly stated or implied the victims were not credible. *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citations and quotations omitted).  Thus, we review each exclusion for obvious errors.

We start with legal errors.  Under our caselaw, district courts must categorically exclude certain types of evidence, such as expert testimony related to the credibility of eyewitnesses.  Such testimony permits an expert to improperly "comment on the weight and credibility" of witnesses and "open[s] the door to a barrage of marginally relevant psychological evidence." *United States v. Thevis*, 665 F.2d 616, 641 (5th Cir. Unit B 1982), *superseded in part by statute*.[3]  Thus, testimony from experts on the reliability of an

---

[3] Decisions of the Fifth Circuit prior to the close of business on September 30, 1981, "shall be binding as precedent in the Eleventh Circuit." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).  Decisions by Unit B panels of the former Fifth Circuit are also binding precedent on this Court. *United States v. Williams*, 790 F.3d 1240, 1248 n.3 (11th Cir. 2015) (citing *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982)).

eyewitness does not help the jury to resolve factual or evidentiary issues. *See United States v. Smith*, 122 F.3d 1355, 1357 (11th Cir. 1997) (collecting cases post-*Daubert*); *United States v. Daniels*, 97 F.4th 800, 807–09 (11th Cir. 2024). Dr. Tillitski sought to testify, in part, about eyewitness identification studies. The district court properly excluded the portion of his testimony about eyewitness reliability because to do otherwise would have been contrary to our precedent.

Our caselaw on expert testimony on the reliability of eyewitnesses does not resolve the entirety of Zappey's challenge, however. Expert testimony on memory reliability is distinct from expert testimony about eyewitness reliability. "The question of whether human memory is reliable [has] generated extensive research" over the past few decades. Simay Ikier *et al.*, *When Is Memory Reliable? Scientific Findings, Theories, and Myths*, 31 APPLIED NEUROPSYCHOLOGY: ADULT 77, 77 (2024), [https://perma.cc/9EY7-PBA5]. Because the reliability of eyewitness identification involves a specific area of memory science, we have recognized that a "jury could determine the reliability of eyewitness identification with the tools of cross-examination." *Smith*, 122 F.3d at 1358. We see no reason to forbid the use of all expert opinions on the reliability of memory solely because a subset of the science is within the jury's common sense.[4]

---

[4] We take special care to note the significance of this novel question before us. As more and more legislatures extend statutes of limitations for sexual abuse

23-11607              Opinion of the Court                17

Our conclusion that this evidence may be permissible, though, does not amount to blanket approval of all expert opinions about the science of memory. We maintain "an attitude of disfavor" towards expert testimony that could open the door to comment on the weight and credibility of witnesses. *Daniels*, 97 F.4th at 807 (citation omitted). However, the jury may not be able to determine the reliability of memory through traditional means of attack such as a cross-examination in every case. *Cf. Barton*, 909 F.3d 1323 (describing the traditional means of attacking evidence). Therefore, a district court is best suited to serve its traditional role in accordance with Rule 702, *Daubert*, and our caselaw,

---

cases—or abandon them altogether—courts are increasingly likely to be presented with sexual abuse cases arising from decades-old incidents, where the primary, if not only, form of evidence will be a victim's own memory of the abuse. *See, e.g.,* David R. Katner, *Delayed Responses to Child Sexual Abuse, The Kavanaugh Confirmation Hearing, and Eliminating Statutes of Limitation for Child Sexual Abuse Cases*, 47 AM. J. CRIM L. 1, 17 n.102 (2020) ("Although occasionally, in some cases a victim's memory of early abuse can be verified . . . such corroboration is the exception, not the rule. Usually it comes down to 'she says/he says.'" (internal citation omitted)); Michael Hill, *NY Let Childhood Sex Abuse Victims Sue; 9,000 Went to Court*, ASSOCIATED PRESS (Aug. 13, 2021), https://apnews.com/article/health-religion-coronavirus-pandemic-sexual-abuse-by-clergy-2bbc11dd595e8b966155eec377060e0c [https://perma.cc/7ZJM-VKFB] (finding that more than 9,000 lawsuits were filed during New York's two-year lookback period which temporarily set aside the usual statute of limitation on civil lawsuits to allow victims of childhood sexual abuse to file lawsuits.). In such instances, it is especially important that we allow district courts the flexibility they need to effectively serve in their role as gatekeepers so as to "promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." FED. R. EVID. 102.

to determine the appropriate instances in which expert testimony on the reliability of memory will help the jury to resolve factual disputes.

This conclusion is bolstered by our sister circuits. Other courts which have addressed this issue permit expert testimony on the reliability of a witness's memory where that testimony is otherwise admissible and does not invade the jury's province to determine the credibility of the witnesses. The Eighth Circuit, for example, considered a case in which five children said that their uncles had sexually abused them. *United States v. Rouse*, 111 F.3d 561, 571 (8th Cir. 1997). In *Rouse*, an expert on child psychology proffered testimony about the way that adults, when interviewing a child, could influence that child's memories and potentially impact their credibility. *Id.* at 570–72. The district court excluded the expert's opinions about whether such practices had been employed in the case at hand. *Id.* at 571. Reviewing the exclusion of that testimony, the Eighth Circuit, in a fractured opinion, determined that "[a] qualified expert may explain to the jury the dangers of implanted memory and suggestive practices when interviewing or questioning child witnesses, but may not opine as to a child witness's credibility." *Id.* at 571.

Recently, the Third Circuit ruled that a district court abused its discretion when it permitted an expert to testify on a theory of memory repression involving claims an adult woman made against her father related to instances of sexual abuse which had occurred during her childhood. *Cohen v. Cohen*, 125 F.4th 454 (3d Cir. 2025).

23-11607                Opinion of the Court                19

In addition to finding the expert's testimony lacked a sound scientific basis or proven methodology, the court also concluded the proffered testimony was unhelpful to the particular facts of the case. *Id.* at 463-64 (noting that expert's testimony would have opined on a particular form of memory recall which did not apply to daughter). The Ninth Circuit similarly has stated, albeit in dicta, that a defendant convicted of sexually assaulting a child "could have, but did not, present expert testimony on the issue of . . . the susceptibility of children to suggestion." *Guam v. McGravey*, 14 F.3d 1344, 1348–49 (9th Cir. 1994) (affirming denial of defendant's request for special jury instruction on the reliability of testimony regarding childhood sexual abuse, opting for the "prevailing view" that accords trial courts discretion involving the credibility of witnesses).[5] These cases persuasively demonstrate the case-specific inquiry necessary to determine whether an expert will help the jury to understand the principles of memory implicated in a specific case's factual disputes. In sum, our rule against the per se inadmissibility of expert evidence on eyewitness testimony does not extend to the larger field of science on the reliability of memory. The district court, therefore, was not required to exclude all the expert's testimony and, as such, we must examine whether the district

---

[5]Analogously, in the habeas context, the Seventh Circuit acknowledged that the district court had permitted expert testimony from a child clinical psychologist on false memory implantation and social influences that affected childhood memory but did not directly discuss this issue. *Thill v. Richardson*, 996 F.3d 469, 473–74 (7th Cir. 2021).

court properly excluded certain testimony about memory science in this instance.

Thus, we turn to whether the district court clearly erred in excluding certain portions of Dr. Tillitski's testimony. The crux of Zappey's defense was that the women's memories regarding allegations of sexual abuse they endured as children from Zappey were unreliable. The district court did not reject Dr. Tillitski's testimony wholesale. *See Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1281 (11th Cir. 2015) ("Where a portion of the proffered expert testimony is reliable, wholesale exclusion can constitute an abuse of discretion."). Rather, it permitted Dr. Tillitski to testify about memory formation, memory decay, myriad factors that create flawed memories, suggestibility and suggested memories, improvement of memory recall over time, and the connection between age and memory formation. Thus, the court permitted Zappey to present a significant amount of Dr. Tillitski's expert testimony about the shortcomings of relying on evidence based solely on one's memory as a child.

Zappey argued that Dr. Tillitski's testimony on additional topics was essential to help the jury evaluate the reliability of the witnesses' memories. *Cf. United States v. Gillis*, 938 F.3d 1181, 1193 (11th Cir. 2019) (explaining a district court did not abuse its discretion when it excluded expert testimony that would violate Rule 704(b) by improperly leaving more than just an inference for the jury to draw about a defendant's mental state). With appropriate care, the district court considered and made its ruling on each

specific point of Dr. Tillitski's proffered testimony. Only after such consideration did the district court limit Dr. Tillitski's testimony to the topics raised by Dr. Cooper. In reaching its decision about admissibility, the district court did not ignore Zappey's position. Rather, based on its careful consideration of Zappey's arguments, the court permitted Dr. Tillitski to testify to more aspects of memory science than it had initially been inclined to admit. Therefore, the district court acted well within its discretion in excluding certain testimony about memory that was common knowledge, was not a good fit for the case, or was simply a method to attack the reliability of the witnesses, and to limit other testimony based on the same factors. *Daniels*, 97 F.4th at 808. We discern no clear error in this considered approach.

Finally, Zappey argues that the district court denied Dr. Tillitski an opportunity to rebut Dr. Cooper's testimony. In *United States v. Frazier*, we explained that if testimony was relevant for one party, testimony from the other party on the same issue should not be excluded provided it was otherwise admissible. 387 F.3d at 1270. However, in *Frazier*, we determined the district court had not abused its discretion where it excluded testimony, even rebuttal testimony, that was not otherwise admissible. *Id.*

Here, the district court permitted Dr. Tillitski to testify on the same issues Dr. Cooper raised, to specifically address the studies that Dr. Cooper cited, and to opine on the aspects of memory that she raised. To the extent that further testimony would have allowed Dr. Tillitski to better challenge Dr. Cooper's implicit

statements about memory—and we are not convinced that it would have—the district court did not abuse its discretion in limiting his testimony. As discussed above, the district court excluded or limited the remainder of Dr. Tillitski's testimony because it was otherwise inadmissible. Thus, the district court committed no clear error here. *See Frazier*, 387 F.3d at 1270.

Moreover, the witnesses' memory related to the sexual abuse they experienced was not the sole evidence that supported the jury's verdict. *See Daniels*, 97 F.4th at 809. The government's case against Zappey included testimony from two former school-teachers and the school's dentist at the time. *See United States v. Wilk*, 572 F.3d 1229, 1235 (11th Cir. 2009) ("[E]ven if the . . . evidence had some relevance, we are hard-pressed to see how it was crucial or necessary to [the defendant]'s establishment of a valid defense."). While Zappey maintains that his expert would have poked a few more holes in the key witnesses' credibility, the exclusion did not prevent him from trying to accomplish that goal; the jury simply found his attempts unconvincing. Thus, on the record before us, we cannot say that the district court abused its considerable discretion in deciding to exclude portions of Dr. Tillitski's testimony.

### B. *The District Court Did Not Abuse Its Discretion in Finding Dr. Neuschatz's Testimony Was Cumulative.*

Under Rule 403 of the Federal Rules of Evidence, relevant evidence may be excluded where it is needlessly cumulative. To succeed in his challenge regarding Dr. Neuschatz, Zappey must

show that the district court clearly or obviously erred in determining that Dr. Neuschatz's proffered testimony was cumulative of the testimony already provided by Dr. Tillitski.

We established the test for whether testimony is cumulative in *Johnson v. United States*, 780 F.2d 902, 905 (11th Cir. 1986). There, we found that expert testimony was not cumulative where the expert was the highest qualified expert, his testimony would have been based on evidence not relied upon by other experts, and his testimony was more comprehensive than the other experts. *Id*. at 906. We further explained the proper application of the *Johnson* factors in *Tran v. Toyota Motor Corp*., 420 F.3d 1310, 1315 (11th Cir. 2005). There, we found expert testimony may be cumulative where it duplicates the testimony of another expert, relies on the same evidence, fails to add different information, or the expert lacks better qualifications. *Id*. These factors should be applied with care. A doubt as to whether the evidence is relevant rather than needlessly cumulative should usually be resolved in favor of admitting the evidence. *United States v. Gaskell*, 985 F.2d 1056, 1063 (11th Cir. 1993).

Here, the *Johnson* factors show that Dr. Neuschatz's testimony could reasonably be considered needlessly cumulative of Dr. Tillitski's expert opinion. We start with their qualifications. Dr. Tillitski is a psychologist who has practiced clinical psychology for 30 years, working with children and teenagers for his entire career. Dr. Neuschatz is a psychologist and tenured professor who has studied memory for 20 years. Dr. Tillitski is a practitioner

while Dr. Neuschatz is a university researcher.  Zappey stated that, unlike a clinician like Dr. Tillitski, Dr. Neuschatz studied memory "day in and day out."  That argument, without more, invites us to wade into the well-known debate about whether academic study makes one more of an expert than real-world experience.  We decline to do so.  The facts do not suggest, and Zappey does not argue, that Dr. Neuschatz is more qualified than Dr. Tillitski to opine on the science of false childhood memories.

Next, we turn to the expert testimony itself.  As we have said in the context of lay witness exclusion, an evidentiary ruling does not "infringe on a defendant's rights when it prevents him merely from increasing the quantity of witnesses who would tell the jury what other witnesses already said."  *United States v. Nunez*, 1 F.4th 976, 991 (11th Cir. 2021) (alteration adopted).  Dr. Tillitski testified at length about memory science, the ways that memories become flawed, and the additional ways that children are vulnerable to forming false memories.  Dr. Neuschatz's proffered testimony focused on memory science and false memory construction, particularly the ways that children can form false memories.  Moreover, Dr. Neuschatz's testimony took up little more than ten pages in the transcript.

Dr. Neuschatz's testimony would have served only to provide the jury with additional examples of research studies about memory, childhood memory, and false memories.  However, more studies do not necessarily equate to new information.  Dr. Neuschatz's testimony would have expanded the volume of

studies, but Zappey did not explain the way such studies would have buttressed, corroborated, or otherwise added a new perspective to those topics. *Cf. Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1385 n.12 (11th Cir. 1988) (finding that characterization of the expert's testimony as "merely cumulative" was unfair where the expert was the only witness able to testify to subject matter and the arbitrators' written award reflected influence of his testimony). Thus, the district court reasonably determined that Dr. Neuschatz would have merely duplicated Dr. Tillitski's extensive testimony.

Given that Dr. Neuschatz and Dr. Tillitski were similarly qualified, would have testified on duplicative topics, and would have provided the same information to the jury, we cannot say that the court abused its discretion by refusing to allow Dr. Neuschatz to testify. *Tran*, 420 F.3d at 1315. Therefore, we affirm the exclusion of Dr. Neuschatz's testimony.

Additionally, even if Dr. Neuschatz's proffered testimony had been legally significant, Zappey's claim that he was harmed by its exclusion cannot succeed. The exclusion of expert testimony offered to impeach a victim's credibility on claims of sexual assault—rather than as substantive evidence of the defendant's guilt or innocence—is harmless when other evidence of the person's guilt is substantial. *Frazier*, 387 F.3d at 1268 n.20. First, Zappey was not prevented from impeaching each woman's credibility through other means and he took ample advantage of those opportunities. *Id.* Second, the evidence against Zappey was substantial. Besides the four victims' testimony, the evidence included

testimony from two other women who said they were molested by Zappey but were not included in the charges; two Patch Elementary teachers who repeatedly reported Zappey for inappropriate contact with students; a dental assistant who, following a school presentation in 2019, reported Zappey to her own supervisor and the school principal for inappropriate contact with students during her visit; a parent who confirmed that her daughter (not a victim identified in the indictment) told her Zappey had touched her under her shirt while she was still in his class, and an FBI special agent. Thus, Zappey was not harmed by the exclusion of Dr. Neuschatz's testimony that, in any event, was largely cumulative of other testimony presented.

V.    **CONCLUSION**

The district court did not abuse its discretion when it excluded portions of Dr. Tillitski's testimony about memory science and all of Dr. Neuschatz's testimony under Federal Rules of Evidence 702 and 403. Accordingly, we affirm Zappey's convictions.

**AFFIRMED.**